## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SHEENA ADAMS, both individually and on behalf of all other similarly situated persons,**<br><br>**Plaintiffs,**<br><br><br>**v.**<br><br><br>**BLOOMBERG L.P.,**<br><br>**Defendant.** | **Case No.:** _____<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

### INTRODUCTION

1. This is a Fair Labor Standards Act (FLSA) collective action and a New York Labor Law Rule 23 class action brought to remedy Defendant Bloomberg L.P.'s failure to pay overtime wages and provide accurate wage statements to a class of non-exempt Customer Support Representatives.

2. Plaintiffs seek unpaid overtime wages, liquidated damages, costs and attorneys' fees, service awards, as well as declaratory relief under the FLSA, 29 U.S.C. § 201 *et seq.* and under New York Labor Law Articles 6 and 19 and their implementing regulations.

### JURISDICTION

3. Jurisdiction is conferred upon this Court by 29 U.S.C. § 216(b) of the Fair Labor Standards Act, by 28 U.S.C. § 1331, this action arising under laws of the United States, and by 28 U.S.C. § 1337, under Acts of Congress regulating commerce.

4.  This Court has supplemental jurisdiction over any state claim raised by virtue of 28 U.S.C.

   § 1367(a).

## VENUE

5.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Plaintiff worked for

   Defendant in this District. The cause of action arose in this District. Many Plaintiffs reside in

   this District. Defendant resides in this District.

## PARTIES

**Plaintiffs**

6.  Named Plaintiff Sheena Adams is a resident of New Jersey. Her FLSA consent to sue form is

   attached hereto.

7.  Plaintiff, and the FLSA and New York class members she seeks to represent, are current and

   former help desk employees who worked for Defendant's call centers and generally have the

   position titles of Global Customer Support ("GCUS") Representatives, Global Technical

   Support ("GTEC") Representatives, Installations Representatives, and Analytics

   Representatives. These positions are also referred to by other names including, but not

   limited to, Implementations Specialists. In this complaint the positions are collectively

   referred to as "Customer Support Representatives."

8.  The term "Plaintiffs" as used in this complaint refers to the Named Plaintiff and any

   additional represented parties pursuant to the collective action provision of 29 U.S.C.

   § 216(b) and to such members of the class brought pursuant to Fed. R. Civ. P. Rule 23, as

   described below, individually, collectively, or in any combination.

2

**Defendant**

9. Defendant Bloomberg L.P. (hereafter "Bloomberg") is a Delaware company registered in New York. Bloomberg lists its business address as 731 Lexington Avenue, New York, New York 10022.

## FACTS

10. Bloomberg is a multinational mass media corporation that provides financial software tools such as analytics and equity trading platforms, data services, and news to financial companies and organizations around the world through the "Bloomberg Terminal."

11. Bloomberg provides news and information through the Bloomberg Terminal and related software platforms to more than 320,000 subscribers and provides help desk technical support to its customers.

12. Upon information and belief, Bloomberg grossed more than $500,000 in each of the past six years.

13. At all times relevant herein, Bloomberg has been an enterprise within the meaning of 29 U.S.C. § 203(r).

14. At all times relevant herein, Bloomberg has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. §203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

15. As an essential part of its Bloomberg Terminal product, Bloomberg offers its customers technical support in the use of the Terminal through Customer Support Representatives, who include GTEC Representatives, GCUS Representatives, Installations Representatives, and Analytics Representatives.

16. GTEC Representatives provide technical support to customers and answer questions about Bloomberg's software and hardware.

17. GCUS Representatives provide technical support to Bloomberg's customers and route customer calls.

18. Installations Representatives provide technical support to customers who need assistance with updates to software and connectivity.

19. Analytics Representatives provide technical support to customers who have questions about the functions of the Bloomberg Terminal.

20. At all times relevant herein, Bloomberg has been an employer of its Customer Support Representatives within the meaning of 29 U.S.C. § 203(d).

21. At all times relevant herein, Plaintiffs were individual employees of Defendant engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

22. Customer Support Representatives work primarily in Bloomberg's call centers in New York City, New York. A small number of Plaintiffs may work in a call center in California.

23. Plaintiff Sheena Adams was employed by Defendant as a Global Technical Support Representative (GTEC) in New York from approximately 2012 to October 2019.

24. Regardless of where they work, Customer Support Representatives are subject to the same Bloomberg employment and compensation policies, access the same work systems, and are evaluated on the same performance metrics.

25. From its inception through 2013, Bloomberg failed to pay overtime premium pay to any class of employees except interns. *See, Enea v Bloomberg L.P.,* 12 Civ. 4656-GBD-FM, Dkt. 102 at pp. 3-8 (S.D.N.Y.) (detailed narrative of Defendant's wage and hour practices prior to the reclassification of call center employees and other positions).

26. Since 2014, after wage and hour lawsuits were filed by Customer Support Representatives and after a U.S. Department of Labor audit of the company, Defendant began to reclassify its Customer Support Representatives as overtime eligible.

27. Since at least 2014, Customer Support Representatives have been scheduled for five eight-hour shifts each week (eight hours plus a one-hour meal break during the workday).

28. Since at least 2014, Bloomberg has required Customer Support Representatives to be logged on to their computers, to access customer services systems, and to review updates to customer service tickets before the start of their shift so they can be ready to handle customer service calls at the time their shift starts.

29. In order to perform these required logging-in functions, Call Center Employees must begin their primary work, a significant non-de-minimis time, before the start time of their scheduled shifts.

30. Since at least 2014, Bloomberg has required Plaintiffs to remain on customer calls until completed even if the call continues into their scheduled meal break.

31. In addition to completing on-going calls, Bloomberg has also required Customer Support Representatives to work through their meal breaks, for example when the volume of calls is heavy, even if they are not on a call at the beginning of their meal break.

32. Since at least 2014, Bloomberg has required Customer Support Representatives who are on customer service calls when their shift ends to remain on the call until completion and complete all work related to the call before ending work for the day.

33. In addition to working beyond their shift hours and through meal breaks while in the office, Bloomberg provides employees with tools to access work remotely and Bloomberg employees perform work off-site.

34. As a result of the policies and practices described in paragraphs 27-33, Customer Support Representatives regularly work more than 40 hours per week.

35. Customer Support Representatives swipe their identity badges upon entering the Call Center building ("badging-in") and upon leaving the building ("badging out").

36. From 2014 to 2018 Bloomberg promised to pay non-exempt employees including Plaintiffs for their "badge time"—i.e. for the time between the badge-in time and the badge-out time.

37. Bloomberg maintains and reviews the badge data.

38. Bloomberg's supervisors review the badge data to ensure Plaintiffs are in the building available to work.

39. Bloomberg communicated this "badge-time" pay policy to its employees and told Plaintiffs that any time spent in the office captured by the badge data would be counted when determining their hourly pay, including overtime compensation.

40. From 2014 to 2018, Bloomberg failed to keep its promise to pay Plaintiffs for their badge time because it deducted meal breaks from the time reflected in the badge data.

41. Bloomberg deducted meal breaks from the time reflected in the badge data even when Plaintiffs worked all or part of their meal break due to continuing calls or demands by their supervisors to work through the meal time.

6

42. Bloomberg's failure to comply with its "badge time" pay policy resulted in unpaid hours of work, including overtime hours, every time a Customer Service Representative was required to work during his or her meal break.

43. After 2018, Bloomberg changed its pay policy to pay Customer Support Representatives for their scheduled hours of work only.

44. As a result of this change in policy, Bloomberg failed to pay Customer Support Representatives for all of their hours of work including:

   a.  Time spent logging in, accessing customer service systems, and reviewing customer service tickets prior to the scheduled start of their shifts;

   b.  Time spent completing on-going calls that continued into the meal break;

   c.  Time spent making themselves available to work during meal breaks when their supervisors required them to; and

   d.  Time spent completing calls and related work that continued after the end of their shifts.

45. Since 2014, Bloomberg has maintained extensive electronic data regarding the activities of its Customer Support Representatives including data regarding the time each activity begins and ends, the time that Customer Support Representatives log into their computers, the time they access customer systems, and the time that calls begin and end.

46. At all times relevant herein, Bloomberg supervisors have monitored this data and used it to evaluate the work Plaintiffs perform.

47. Bloomberg has known that Customer Support Representatives performed uncompensated work during their meal breaks because it knew when its supervisors required Customer Support Representatives to work through their meal breaks and it knew when on-going calls

continued into the meal period and when those calls ended. In addition, Bloomberg has also known that Customer Support Representatives performed uncompensated work, including work before and after their scheduled shifts, because it maintains and reviews records of the time Customer Support Representatives log onto their computers and access customer systems before the scheduled start of their shifts, and Bloomberg knows when on-going calls extend beyond the end of a worker's shift and when those calls end.

48. Bloomberg has been aware of and has suffered and permitted Customer Support Representatives to perform uncompensated hours of work as described above.

49. Bloomberg's failure to pay proper premium overtime wages for each hour worked over 40 per week was willful.

50. Since 2014, the wage statements that Bloomberg provided to Plaintiffs do not list the regular hours worked or the rate paid for such hours, nor did they list the accurate number of overtime hours that Plaintiffs worked.

## COLLECTIVE ACTION ALLEGATIONS

51. Named Plaintiff brings this case as a collective action consisting of:

> All non-exempt Customer Support Representatives employed by
> Bloomberg within the three years preceding the filing of this action who file
> a consent to sue to participate in the action. ("FLSA Class").

52. Bloomberg is liable under the Fair Labor Standards Act ("FLSA") for failing to pay all the overtime wages due to the Named Plaintiff and the FLSA Class. The Named Plaintiff and the FLSA Class Members work or have worked for Bloomberg as Customer Support Representatives and have been subjected to Bloomberg's policy and pattern or practice of failing to pay for all overtime wages for hours worked in excess of 40 hours per week.

53. Named Plaintiff's claim for overtime pay is similar to the claim of other FLSA Class Members and her claim depends on similar factual and legal questions including, but not limited to, whether Bloomberg knew or should have known that Plaintiffs worked overtime hours; whether Bloomberg failed and/or refused to pay the FLSA Class Members overtime wages; and whether Bloomberg's violations were willful.

54. There are many similarly-situated employees who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join it. Those similarly-situated employees are known to Bloomberg, are readily identifiable, and can be located through Bloomberg's records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## NEW YORK CLASS ALLEGATIONS

**The New York Class**

55. Named Plaintiff brings this case as a Rule 23 class action consisting of:

> All non-exempt Customer Support Representatives employed by Bloomberg in New York at any time within the six years preceding the filing of this complaint. ("New York Class").

56. Upon information and belief, the New York Class is composed of more than 40 individuals.

57. The Named Plaintiff and the New York Class Members work or have worked for Bloomberg as Customer Support Representatives and have been subjected to Bloomberg's policy and pattern or practice of failing to pay for all overtime wages for hours worked in excess of 40 hours per week and have been subjected to Bloomberg's policy of not providing wage statements in compliance with NYLL. Bloomberg acted and refused to act on grounds generally applicable to the New York Class Members, thereby making declaratory relief with respect to the New York Class appropriate.

58. There are questions of law and fact common to the New York Class including but not limited to whether Bloomberg knew or should have known that Plaintiffs worked overtime hours, whether Bloomberg failed and/or refused to pay the New York Class Members overtime wages, and whether Bloomberg failed to provide the Class Members with wage statements that complied with NYLL.

59. The claims of the Named Plaintiff are typical of the claims of the New York Class she seeks to represent.

60. The Named Plaintiff and her counsel will adequately protect the interests of the New York Class.

61. Common questions of law or fact predominate over individual questions and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

**The New York Unpaid Badge Hours Sub-Class**

62. Named Plaintiff brings her breach of contract/New York Labor Law Art. 6 §§ 190 *et seq.* claims on behalf of a sub-class of the New York Class defined above. This subclass consists of those members of the New York Class who were employed as non-exempt Customer Support Representatives between 2014 and 2018 and who were promised they would be paid according to their badge time.

63. Upon information and belief, the New York Unpaid Badge Hours Sub-Class is composed of more than 40 individuals.

64. The Named Plaintiff and the New York Unpaid Badge Hours Sub-Class Members work or have worked for Bloomberg as Customer Support Representatives and have been subjected to Bloomberg's policy and pattern or practice of failing to pay for all badge hours. Bloomberg acted and refused to act on grounds generally applicable to the New York Unpaid

Badge Hours Class Members, thereby making declaratory relief with respect to the New York Unpaid Badge Hours Class appropriate.

65. There are questions of law and fact common to the New York Unpaid Badge Hours Class including, but not limited to, whether Bloomberg promised to pay for all badge hours and whether Bloomberg failed and/or refused to pay the New York Unpaid Badge Hours Class Members for all badge hours.

66. The claims of the Named Plaintiff are typical of the claims of the New York Unpaid Badge Hours Class she seeks to represent.

67. The Named Plaintiff and her counsel will adequately protect the interests of the New York Unpaid Badge Hours Class.

68. Common questions of law or fact predominate over individual questions and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

## FIRST CAUSE OF ACTION
**(Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*:**
**On Behalf of Named Plaintiff and the FLSA Class)**

69. Since 2014, Named Plaintiff and the members of the FLSA class worked in excess of 40 hours a week and did not receive premium overtime pay for all of their overtime hours.

70. Bloomberg's failure to pay premium overtime wages to Named Plaintiff and the FLSA Class for all of their hours of work in excess of 40 hours per week violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and its implementing regulations, and caused Plaintiff and the FLSA Class injury.

71. Plaintiff and the members of the FLSA Class are entitled to relief for Bloomberg's FLSA violation, including unpaid wages, liquidated damages, costs, and attorneys' fees, pursuant to 29 U.S.C. § 216(b).

11

## SECOND CAUSE OF ACTION
**(New York Labor Law Article 6 §§ 190 *et seq.* and Article 19 §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142: On behalf of Named Plaintiff and the New York Class)**

72. Bloomberg failed to pay premium overtime wages to the Named Plaintiff and the New York Class Members in violation of New York Labor Law Articles 6 and 19 and their implementing regulations, including, but not limited to, 12 NYCRR Part 142.

73. As a result of Bloomberg's violations of the New York Labor Law, Named Plaintiff and the New York Class have suffered damages by being denied overtime wages in accordance with the New York Labor Law in amounts to be determined at trial. They are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to New York Labor Law Article 6 §§ 190 *et seq.*, Article 19 §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.

## THIRD CAUSE OF ACTION
**(New York Labor Law Article 6, §§ 190 *et seq.*:
On behalf of Named Plaintiff and the New York Unpaid Badge Hours Sub-Class)**

74. By deducting meal times from the Named Plaintiff and members of the New York Unpaid Badge Hours Sub-Class who were badged in during meal times, Bloomberg breached the terms of its agreement in violation of New York Labor Law Article 6, §§ 190 *et seq.*

75. As a result of Bloomberg's breach of contract and violation of the New York Labor Law Art. 6 §§ 190 *et seq.*, Named Plaintiff and the New York Unpaid Badge Hours Sub-Class have suffered damages by being denied compensation according to the agreed terms of employment in amounts to be determined at trial, and are entitled to recovery of such

amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to New York Labor Law Article 6, §§ 190 *et seq.*

## FOURTH CAUSE OF ACTION
### (New York Labor Law Article 6, §§ 190 *et seq.*: On behalf of Named Plaintiff and the New York Class)

76. By failing to provide wage statements that reflected the actual regular hours and the rate paid for such hours, and by failing to account for and pay for all overtime hours worked, Bloomberg failed to provide the Named Plaintiff and the members of the New York Class accurate wage statements as required by New York Labor Law § 195(3).

77. Bloomberg's violation of NYLL § 195(3) caused Plaintiff and the members of the Wage Statement Class injury for which they are entitled to relief in an amount to be determined at trial, plus costs and attorneys' fees, pursuant New York Labor Law Article 6, §§ 190 *et seq.*

## RELIEF SOUGHT

**WHEREFORE,** Plaintiff prays for judgment against Defendant with respect to the FLSA violations as follows:

1.   Recognizing this proceeding as a collective action under § 216(b) of the FLSA and ordering notice to the putative class members at the earliest opportunity to ensure class members' claims are not lost to the FLSA statute of limitations;

2.   Finding Defendant liable for unpaid back wages due to Plaintiff (and those who have joined in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff under the FLSA;

3.   Awarding Plaintiff (and those who have joined in the suit) the costs of this action as provided under the FLSA;

13

4.   Awarding Plaintiff (and those who have joined in the suit) their attorneys' fees as provided under the FLSA; and

5.   Awarding Plaintiff (and those who have joined in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law.

**WHEREFORE,** Plaintiff prays for judgment against Defendant with respect to the New York Class as follows:

1.   Certifying this action as a class action;

2.   Designating Plaintiff as the Class Representative;

3.   Declaring that the practices complained of herein are unlawful under the laws of New York;

4.   Appointing the undersigned as class counsel;

5.   Ordering appropriate equitable and injunctive relief to remedy Defendant's violations of state law, including, but not necessarily limited to, an order enjoining Defendant from continuing its unlawful practices;

6.   Awarding damages, liquidated damages, appropriate statutory penalties, and restitution to be paid by Defendant according to proof;

7.   Awarding pre-judgment and post-judgment interest, as provided by law;

8.   Ordering such other injunctive and equitable relief as the Court may deem just and proper;

9.   Awarding Plaintiff attorneys' fees and costs of suit, including expert fees and costs; and

10. Granting such other and further relief as may be necessary and appropriate.

14

Respectfully Submitted,
Dated: September 18, 2020

Artemio Guerra
Getman, Sweeney & Dunn PLLC
260 Fair St.
Kingston NY 12401
Tel: (845) 255-9370
Fax: (845)255-8649
Email: aguerra@getmansweeney.com