UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

SHEENA ADAMS, *individually and on behalf of
all other similarly situated persons*,

Plaintiff,

v.

BLOOMBERG L.P.,

Defendant.

No. 20-cv-7724 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Sheena Adams brings this putative class and collective action against Defendant
Bloomberg L.P. ("Bloomberg") for violations of the Fair Labor Standards Act ("FLSA") and New
York Labor Law ("NYLL"). Four individuals—Anthony Provenzale, Rodrick Telford, Keerti
Hariharan, and Amber Adam—have also opted in as plaintiffs. In a Report and Recommendation
dated February 13, 2023 (the "R&R"), Magistrate Judge Cott recommended granting Bloomberg's
motion for summary judgment as to all of Adams' claims and denying Adams' motion for leave
to amend without prejudice to renewal by the opt-in plaintiffs.[1] *Adams v. Bloomberg L.P.*, 2023
WL 1957681 (S.D.N.Y. Feb. 13, 2023). For the reasons that follow, the Court adopts the
conclusions of the R&R in full.

## BACKGROUND

The Court assumes the parties' familiarity with the factual background and procedural
history of this action, which are detailed, among elsewhere, in the R&R, and summarizes only the

---

[1] Judge Cott also recommended granting Bloomberg's request to file a Reply Rule 56.1 Statement of Facts,
which the Court adopted separately in an Order dated March 28, 2023.

most pertinent facts here.[2]  Beginning in January 2012, Adams was employed in Bloomberg's Customer Support Department, first as a Global Technical Support Representative ("GTEC Representative") and later as an Implementation Specialist.  Def. 56.1 Statement of Facts ¶¶ 3-5, 9.  Adams' position as a GTEC Representative was initially classified as exempt and not eligible for overtime pay, but on March 31, 2016, the position was reclassified as non-exempt.  *Id.* ¶ 7.  Adams was classified as a non-exempt employee for the remainder of her employment at Bloomberg, until she was terminated on October 25, 2019.  *Id.* ¶ 28.

During the relevant time frame, Bloomberg used two different methods to calculate overtime payments.  The first method, starting in July 2016, relied on a "badge system" to track the number of hours that non-exempt employees were physically present in the Bloomberg office (the "Badge Period").  *Id.* ¶¶ 37, 40-43.  Employees swiped their badges at a turnstile when entering or exiting the building, and any in-office time over forty hours per week constituted overtime.  *Id.*  This system also relied on a "rounding policy," whereby badge times were rounded either up or down to the nearest quarter-hour (the "Rounding Policy").  *Id.* ¶ 47.  If an employee badged out seven minutes or less after the last-quarter hour, the recorded time would be rounded down, and if an employee badged out more than seven minutes after the last quarter-hour, the recorded time would be rounded up.  *Id.* ¶ 48.  In addition, any badged-out time would only start counting, pursuant to the Rounding Policy, after the twenty-minute mark (the "Twenty-Minute Rule").  *Id.* ¶ 49.  If an employee was badged out of the office for twenty minutes or less, the break

---

[2] As Judge Cott noted, in certain paragraphs of her responses to Bloomberg's Rule 56.1 Statement of Facts, Adams failed to "specifically controvert" Bloomberg's statement as required by Local Civil Rule 56.1(c). *See Adams*, 2023 WL 1957681, at *1 n.2 (citing *Wells Fargo Bank, N.A. v. Bivona & Cohen, P.C.*, 2016 WL 2745847, at *1 n.2 (S.D.N.Y. May 11, 2016)).  The Court agrees, and in such instances, deems Bloomberg's statement to be admitted.  *See* Local Civil Rule 56.1(c); *see also Russell v. Aid to Developmentally Disabled, Inc.*, 753 F. App'x 9, 12-13 (2d Cir. 2018) (holding that a district court does not abuse its discretion "in requiring compliance with [Local Rule 56.1] and crediting as undisputed those facts that [the non-moving party] did not properly controvert in her opposition").

2

would not be recorded, and the employee would be compensated for that time as if she had never left. *Id.* ¶¶ 38, 50.  For out-of-office work performed during the Badge Period, employees would self-report their overtime hours by submitting a "service desk" ticket, also known as an "SDSK" ticket. *Id.* ¶ 55.

On February 10, 2019, Bloomberg switched to a new method of tracking employee hours. Instead of using badge data, Bloomberg required employees to self-report their overtime hours on a platform called "MYHR" (the "MYHR Period"). *Id.* ¶ 68.  The default setting on MYHR was an eight-hour block of time per day, but employees could access their timesheets on a daily basis to edit the number of hours they actually worked. *Id.* ¶¶ 70-76.  Bloomberg trained non-exempt employees on how to use MYHR before the system was implemented, instructing them to report any time worked over forty hours per week. *Id.* ¶¶ 79-80.  The MYHR system remained in place when Adams' employment was terminated in October 2019.

Adams initiated this action on September 18, 2020, and she filed the Second Amended Complaint ("SAC")—currently the operative complaint—on December 13, 2021.  The SAC brings five causes of action: (1) unpaid overtime in violation of the FLSA; (2) unpaid overtime in violation of the NYLL; (3) unpaid wages in violation of NYLL § 193; (4) failure to provide accurate wage statements in violation of NYLL § 195(3); and (5) failure to provide the wage notice required under NYLL § 195(1).  Adams also sought leave to file a Third Amended Complaint on May 4, 2022.  On June 30, 2022, while Adams' request for leave to amend was pending, Bloomberg moved for summary judgment as to all of Adams' claims in the SAC.  This case was referred to Judge Cott for general pretrial management, conditional certification, and dispositive motions.

3

In the R&R, Judge Cott recommended granting Bloomberg's motion for summary judgment as to all of Adams' claims and denying Adams' motion for leave to amend without prejudice to renewal by the opt-in plaintiffs. Specifically, with respect to Adams' individual claims, Judge Cott recommended: (1) granting summary judgment on Adams' claim for unpaid overtime during the Badge Period, because the Rounding Policy was neutral on its face and as-applied, and because Adams testified that she never failed to report out-of-office work during the Badge Period; (2) granting summary judgment on Adams' claim for unpaid overtime during the MYHR Period, because Adams failed to present evidence raising a "just and reasonable inference" that she was not compensated for work she performed; (3) granting summary judgment on Adams' claim for unpaid wages under NYLL § 193, because Adams failed to allege any specific deductions to her wages, as required by the statute; (4) granting summary judgment on Adams' wage statement claim under NYLL § 195(3), because Bloomberg made complete and timely payment of all wages due, which constitutes an affirmative defense; and (5) granting summary judgment on Adams' wage notice claim under NYLL § 195(1) as time-barred.

Adams filed timely objections to the R&R on March 29, 2023, and Bloomberg filed its response on May 12, 2023.[3] Adams objects to each of Judge Cott's recommendations, except with respect to her third cause of action under NYLL § 193.

## LEGAL STANDARD

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court "must make a de novo determination of the

---

[3] In an Order dated February 17, 2023, the Court granted Adams' request for a 30-day extension of time to file objections to the R&R, making her filing on March 29 timely. The Court granted Bloomberg a corresponding extension of time to file a response by May 12, 2023.

portions of the report to which timely objections are made," but in the absence of such objections, "a district court need only satisfy itself that there is no clear error on the face of the record." *Gomez v. Brown*, 655 F. Supp. 2d 332, 341 (S.D.N.Y. 2009) (internal quotation marks omitted).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (internal quotation marks omitted). A fact is material if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary [under the governing law] will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, the Court must view all facts "in the light most favorable to the non-moving party." *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

While "[t]he movant has the burden of showing that there is no genuine issue of fact," the non-moving party "is not thereby relieved of [her] own burden of producing in turn evidence that would support a jury verdict." *Anderson*, 477 U.S. at 256. In other words, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial" to defeat summary judgment. *Id.*; *see also Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) ("[I]f the [defendant] has made a properly submitted motion [for summary judgment], the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden . . . .").

## DISCUSSION

Given Adams' timely objections, the Court applies de novo review to each of the following claims, with the exception of the NYLL § 193 claim, which the Court reviews for clear error.

## I.     Unpaid Overtime Under the FLSA and NYLL

Both the FLSA and the NYLL require employers to pay overtime compensation to non-exempt employees for time worked over forty hours per week.  *See* 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4.  "To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that [she] performed work for which [she] was not properly compensated, and that the employer had actual or constructive knowledge of that work."  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); *see also Williams v. Bier Int'l, LLC*, 2015 WL 4461668, at *2 n.1 (S.D.N.Y. July 21, 2015) ("The NYLL largely mirrors the FLSA in its wage and overtime compensation provisions.").  At the summary judgment stage, a plaintiff need not "precisely quantif[y] the amount of uncompensated work [she] has performed," but she must demonstrate that a "genuine issue of fact exists as to whether *some* uncompensated work was performed, defendants knew of this work, and a reasonable basis exists for calculating the amount of that work."  *Sherald v. Embrace Techs., Inc.*, 2013 WL 126355, at *6 (S.D.N.Y. Jan. 10, 2013) (emphasis in original) (citing *Kuebel*, 643 F.3d at 365).  "[I]f an employer's records are inaccurate or inadequate, an employee need only present 'sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference'" to defeat summary judgment.  *Kuebel*, 643 F.3d at 362 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

### A.  The Badge Period

Adams argues that she is owed unpaid overtime with respect to the Badge Period for both in-office work, due to the operation of the Rounding Policy, and out-of-office work, due to the inaccuracy and unreliability of the SDSK tickets.  The Court addresses each argument in turn.

### 1. The Rounding Policy

"Rounding practices are not per se unlawful under the FLSA." *Canelas v. World Pizza, Inc.*, 2017 WL 1233998, at *10 (S.D.N.Y. Mar. 31, 2017) (internal quotation marks omitted). While the Second Circuit has yet to address the validity of employer rounding policies, a Department of Labor regulation endorses the practice as follows:

> ***"Rounding" practices.*** It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b). Following this guidance, courts both in this Circuit and across the country have approved of rounding policies that are "neutral on [their] face and in application." *Vasquez v. Victor's Cafe 52nd St., Inc.*, 2019 WL 4688698, at *4 (S.D.N.Y. Sept. 26, 2019) (quoting *Boone v. PrimeFlight Aviation Servs., Inc.*, 2018 WL 1189338, at *14 (E.D.N.Y. Feb. 20, 2018)); *see also Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F.3d 1069, 1076 (9th Cir. 2016) (collecting cases). In other words, a rounding policy is permissible if it "on average, favors neither overpayment nor underpayment," whereas it is impermissible if it "favor[s] the employer and systematically undercompensate[s] employees." *Boone*, 2018 WL 1189338, at *7 (collecting cases).

### a. Facial Neutrality

Judge Cott concluded that the Rounding Policy is neutral on its face because it "rounds all badge times, and rounds them both up and down." *Adams*, 2023 WL 1957681, at *8 (citing *Vasquez*, 2019 WL 4688698, at *4). Adams argues that Judge Cott erred by ignoring evidence "that Bloomberg selectively suspended its Rounding Policy to implement a '20-minute rule' to

identify and deduct times when employees were outside the building," and further erred "in deeming Bloomberg's '20-minute rule' immaterial to the analysis of the neutrality of the Rounding Policy." Pl. Objections at 11.

The Court agrees with Judge Cott that the Rounding Policy is neutral on its face because it rounds badge times both up and down to the nearest quarter-hour. Adams offers no evidence in support of her assertion that the Twenty-Minute Rule "selectively suspended" the Rounding Policy in a way that negatively impacted Bloomberg's employees. She merely points to a declaration from Steven Shore, a Payroll Analyst at Bloomberg, and cites the following paragraphs:

> 9.      If an employee left the building (and badged out) and returned (and badged in) in twenty minutes or less, the time was also counted as time worked by the employee. If the employee badged out for longer than twenty minutes, then the time out of the building would not be counted as time worked.

> 10.     From September 2017 up until the time [Bloomberg] stopped relying on badge data to determine overtime hours in February 2019, badge in and badge out times were rounded up or down to the nearest quarter hour.

> 11.     Meal breaks were never automatically deducted from the badge data for any employee at any time when [Bloomberg] used badge data to pay overtime. The only time a break (meal or other break) would not be counted as time worked by the employee was when the duration of time between a badge-out and a badge-in exceeded twenty minutes.

Pl. Objections at 11 (citing Pl. Resp. to Def. 56.1 Statement of Facts ¶ 48, in turn citing Shore Decl. ¶¶ 9-11). These facts simply describe how the Twenty-Minute Rule worked, and do not, in any reasonable way, suggest that that the Twenty-Minute Rule operated to the detriment of Bloomberg's employees. Indeed, as Bloomberg asserts, it only implemented the Twenty-Minute Rule to comply with a federal regulation that requires all break times between five and twenty minutes to be compensated. *See* 29 C.F.R. § 785.18. Put differently, if it were not for the Twenty-Minute Rule, then employees would be paid even *less*, because *any* break time—whether it was less than twenty minutes or more than twenty minutes—would be uncompensated and subject to

the Rounding Policy.  There is simply no evidence in the record that would allow a reasonable juror to conclude that the Twenty-Minute Rule "selectively allows rounding when it benefits the employer, but disallows rounding when it does not work to the employer's advantage," as Adams baldly asserts.  Pl. Objections at 11 (internal quotation marks omitted).[4]

Adams also suggests that the Twenty-Minute Rule somehow renders the Rounding Policy facially non-neutral because all time worked "during a continuous workday" must be compensated. Pl. Objections at 14 (citing *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 472 (S.D.N.Y. 2015)).  But that argument appears to address a separate issue—namely, whether Bloomberg may deduct breaks over twenty minutes at all—and not the permissibility of the Rounding Policy. Given that the SAC does not allege that Bloomberg impermissibly deducted compensable breaks, it is not clear how this issue is even relevant to the conduct alleged.

In any event, employee break time is only compensable if it is spent "predominantly for the benefit of the employer."  *Singh v. City of New York*, 524 F.3d 361, 368 (2d Cir. 2008).  At oral argument, Adams insisted that a question of fact exists as to this issue because "Bloomberg doesn't say what Ms. Adams is doing outside of the building and we don't know whether she is completely relieved of all work."  Hr'g Tr. at 15:12-14 (Aug. 21, 2023).  Adams misconstrues the applicable burden.  To defeat summary judgment—after the movant has demonstrated no genuine dispute of material fact—the non-moving party must present "affirmative evidence . . . from which a jury might return a verdict in [her] favor."  *Anderson*, 477 U.S. at 257.  And in the FLSA context, as discussed, "[it] is the plaintiff's burden to show that [she] 'in fact performed work for which

---

[4] Adams also cites to deposition testimony asserting that the Twenty-Minute Rule was a "Bloomberg policy," not a functionality of the Rounding Policy software, and the fact that the badge system "captures actual times employees enter and exit the building."  Pl. Resp. to Def. 56.1 Statement of Facts ¶ 47 (citing White Deposition Tr. 50:11-51:6).  Again, these facts merely reflect how the badge system worked, and do not reasonably imply that the Twenty-Minute Rule operated only to Bloomberg's advantage.

[she] was improperly compensated.'" *Perkins v. Bronx Leb. Hosp. Ctr.*, 2016 WL 6462117, at \*4 (S.D.N.Y. Oct. 31, 2016) (quoting *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997)); *see also Kuebel*, 643 F.3d at 361. Adams offers no evidence demonstrating that any of the time she spent badged out of the office for more than twenty minutes was "predominantly for the benefit of [Bloomberg]" as opposed to herself, *Singh*, 524 F.3d at 368, and a reasonable jury thus could not conclude—even assuming it is a claim in dispute—that Adams is owed compensation for work she performed during her breaks.

### b. Neutrality in Application

Judge Cott also concluded that the Rounding Policy is neutral in application, because "the rounding for some badge events and workweeks benefitted Adams and the rounding for other weeks benefitted Bloomberg." *Adams*, 2023 WL 1957681, at \*8 (internal quotation marks omitted). Adams countered that, because of the Rounding Policy, she "suffered a net loss of 2.55 hours of compensation" over the course of two-and-a-half years—during which she only actually worked for eight weeks, due to her maternity leave and childcare responsibilities. *Id.*; *see* Pl. Resp. to Bloomberg's 56.1 Statement of Facts ¶ 66. In response, Judge Cott reasoned that she was also "compensate[ed] for time where she was not working," because a number of activities she conducted between badging in and badging out—including walking from the turnstile to her desk—were not compensable "work" as defined by federal law. *Id.* at \*9.

The Court agrees that the Rounding Policy, which was consistently applied to all overtime-eligible employees, is neutral in application. It is true that courts have found rounding policies to lack neutrality when they were implemented in a way that systematically favored the employer. *See, e.g.*, *Austin v. Amazon.com, Inc.*, 2010 WL 1875811, at \*3 (W.D. Wash. May 10, 2010) (rejecting a policy that "allows rounding when it benefits the employer without disciplining the

employee; but disciplines the employee when the rounding does not work to the employer's advantage"); *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 933 (N.D. Ill. 2003) (finding a genuine dispute of material fact as to whether the employer's rounding policy was permissible because the employer allowed supervisors to edit employee swipe-in and swipe-out times). But here, by contrast, Adams does not point to any such discrepancy, instead relying on the 2.55 net hours that she allegedly lost over the course of the Badge Period due to the Rounding Policy. In fact, Adams does not cite any authority, nor is the Court aware of any, that has rejected a rounding policy due to a net loss of similar magnitude for a single employee. During oral argument, Adams pointed to *Houston v. Saint Luke's Health System, Inc.*, 76 F.4th 1145 (8th Cir. 2023), but that case is easily distinguishable. In *Houston*, the plaintiff offered an expert's analysis of a massive data set, totaling 7 million shifts for 13,000 employees. *Id.* at 1148. From this analysis, the plaintiff's expert identified approximately 74,000 hours of undercompensation over a period of six years, or $140,000 in lost overtime pay for the two-year FLSA collective period— a magnitude of undercompensation absent here. *Id.* Adams also cites *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912 (N.D. Ill. 2003) in her opposition to Bloomberg's motion for summary judgment, *see* Pl. Opp. Br. at 15, but that case is inapposite as well. There, the employer's rounding policy—which allowed supervisors to edit the swipe-in and swipe-out times of their employees—resulted in "major discrepancies between the actual hours worked by employees . . . and the hours for which employees [were] paid," with the plaintiffs "document[ing] thousands of minutes" of unpaid time. *Gonzalez*, 296 F. Supp. 2d at 933.

By comparison, a net loss of 2.55 hours totals only 153 minutes. At least one court in this District has concluded, on strikingly similar facts, that the loss of less than three hours of compensation over the course of approximately three years is a de minimis amount and does not

11

render a rounding policy non-neutral.  *See Vasquez v. Victor's Cafe 52nd St., Inc.*, 2019 WL 4688698, at *4 (S.D.N.Y. Sept. 26, 2019); *see also Corbin*, 821 F.3d at 1077 ("If the rounding policy was meant to be applied individually to each employee to ensure that no employee ever lost a single cent over a pay period, the regulation would have said as much."); *Boone*, 2018 WL 1189338, at *9 (concluding that an underpayment of $82 over the course of 26 months is a de minimis amount).  Bloomberg clarified at oral argument that, in taking this same position, it is not invoking the de minimis doctrine articulated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), which applies when the failure to account for "uncertain and indefinite periods of time" is "justified by industrial realities."  29 C.F.R. § 785.47; *see* Hr'g Tr. at 33:2-9.  Rather, Bloomberg's point—with which the Court agrees—is simply that, when the alleged underpayment at issue is such a small amount, it does not affect the neutrality of a rounding policy.  Indeed, it is unrealistic to expect a rounding policy to even out perfectly to the dollar, even over a substantial period of time.  The federal regulation requires only that the arrangement "averages out" such that employees are not *systematically* underpaid.  29 C.F.R. § 785.48(b); *see also Boone*, 2018 WL 1189338, at *7.  That mandate is best read as leaving room for a de minimis amount of variance, which, at least in this instance, does not raise a triable issue of fact as to the permissibility of the Rounding Policy.  *See Corbin*, 821 F.3d at 1077 (reasoning that the plaintiff's position—that a rounding policy is impermissible "if an employee loses any compensation" under the policy— "would undercut the purpose and would gut the effectiveness of a rounding policy . . . [as it] would require employers to engage in the very mathematical calculations that the federal rounding regulation serves to avoid").[5]

---

[5] Adams insists that the purported net loss of 2.55 hours should be measured against eight weeks, not two-and-a-half years, because she only worked eight overtime weeks during the Badge Period.  *See* Pl. Resp. to Bloomberg's 56.1 Statement of Facts ¶ 66.  Even assuming that to be true, it does not help Adams' case.  As discussed further below, rounding practices should be assessed over the long term, and eight weeks is

Adams also attempts to rely on a "representative" sample of overtime weeks which, according to her, indicates that under the Rounding Policy, "Bloomberg failed to pay employees for all work hours in 90% of all overtime weeks." Pl. Objections at 7; *see also id.* at 12-13. Adams fails to explain, however, why this sample should be considered "representative." The data spans just four to five weeks, many of which are non-consecutive, for four individual employees. *See* Def. Opp. to Conditional Cert. at 13; Pl. Objections at 12-13.[6] Even drawing all reasonable inferences in Adams' favor, it is too far of a stretch to infer that, based on this smattering of weeks, Bloomberg "failed to pay employees for all work hours in 90% of all overtime weeks," as Adams asserts. *See Corbin*, 821 F.3d at 1077 (observing that the purpose of a rounding policy is "to calculate wages efficiently," such that "sometimes, in any given pay period, employees come out ahead and sometimes they come out behind, but the policy is meant to average out in the long-term"). Adams claims that Bloomberg was the one to first call this sample "representative," citing to Bloomberg's opposition to the motion for conditional certification, but that citation takes Bloomberg's statement out of context. *See* Pl. Objections at 12 (citing Pl. Resp. to Def. 56.1 Statement of Facts ¶ 62, in turn citing Def. Opp. to Conditional Cert. at 13 n.10). In that opposition, Bloomberg asserted that the data set is a "representative sample" of the fact that "Bloomberg did not at any point automatically deduct meal breaks from the badge hours of [overtime-eligible] employees," Def. Opp. to Conditional Cert. at 13, which was in response to Adams' original claim

---

[6] too small of a sample size to raise a genuine dispute of fact as to the Rounding Policy's neutrality. *See Corbin*, 821 F.3d at 1077; *see also Houston v. Saint Luke's Health Sys., Inc.*, 76 F.4th 1145, 1150 (8th Cir. 2023) ("[A] single cherry-picked period is likely insufficient to demonstrate undercompensation in the long run.").
[6] Specifically, the sample size consists of the following weeks: (1) for Adams: August 5, 2018, August 26, 2018, September 9, 2018, and September 23, 2018; (2) for opt-in plaintiff Anthony Provenzale: October 1, 2017, November 19, 2017, January 7, 2018, May 20, 2018, and July 15, 2018; (3) for opt-in plaintiff Rodrick Telford: November 12, 2017, May 6, 2018, May 13, 2018, May 20, 2018, and June 3, 2018; and (4) for an additional declarant, Aseneth Ramos: September 17, 2017, September 24, 2017, October 8, 2017, October 15, 2017, and October 29, 2017.

in this case, *see* First Am. Compl. ¶¶ 40-41.  The deduction of meal breaks—which is no longer a claim at issue—has no relation to the permissibility of the Rounding Policy.

Finally, Adams argues that summary judgment cannot be granted on the Rounding Policy because, according to her, "rounding must be evaluated based on its effect 'on the putative class as a whole.'"  Pl. Objections at 8 (citing *Boone*, 2018 WL 1189338, at *9).  But the *Boone* case does not stand for that proposition.  *Boone* stated that a plaintiff "cannot defeat summary judgment on [a] rounding claim by having the Court focus solely on [the plaintiff's] time entries"—it never went so far as to state that an entire putative class must be evaluated before drawing any conclusions on the permissibility of a rounding policy.  *Boone*, 2018 WL 1189338, at *9.  Nor do either of Adams' other citations, both of which are from out-of-circuit jurisdictions, compel a different conclusion.  *See Utne v. Home Depot U.S.A., Inc.*, 2017 WL 5991863, at *2 (N.D. Cal. Dec. 4, 2017) (considering the defendant's proffered expert analysis of "roughly 10 percent of the putative class" in evaluating neutrality); *Bebber v. Dignity Health*, 2022 WL 4080956, at *7 (E.D. Cal. Sept. 6, 2022) (considering the plaintiff's proffered expert analysis of 199 class members, or "less than ten percent of the entire class," in evaluating neutrality).  Neither case suggested that summary judgment cannot be granted in favor of the employer without data on the entire putative class.

In sum, Adams does not present "affirmative evidence . . . from which a jury might return a verdict in [her] favor" with respect to Bloomberg's Rounding Policy, and she thus fails to defeat summary judgment on this issue.  *Anderson*, 477 U.S. at 257.

### 2.  Out-of-Office Work

With respect to out-of-office work performed during the Badge Period, Judge Cott rejected Adams' claim for unpaid overtime because "Adams testified that there was never a time she

worked out-of-office for which she did not submit an SDSK ticket." *Adams*, 2023 WL 1957681, at *10. Specifically, when asked during her deposition whether there was "ever any time that you worked outside of the office that you did not report on an SDSK ticket," Adams unequivocally responded, "[n]o." *Id.* (quoting Adams Dep. At 256:7-15). Adams argues that Judge Cott erred by "overlook[ing] [testimony from the opt-in plaintiffs] confirming that SDSK tickets during the Badge Period were not accurate and estimating the amount of out-of-office work they performed but did not report on SDSK." Pl. Objections at 18. A reasonable jury could thus infer, Adams argues, that she was not compensated for all of her out-of-office overtime.

Whether or not other employees failed to report overtime work on SDSK tickets is irrelevant to Adams' claim in light of her unequivocal admission that she never made such an error. *See* Adams Deposition Tr. 256:7-15. Indeed, she went on to testify, in equally clear terms, that there were two types of out-of-office work she performed during the Badge Period—escalating a ticket, or "project work"—and when asked whether she submitted SDSK tickets for both types of work, she again categorically answered, "Yes." *Id.* at 258:23-262:4. Adams does not specifically controvert this testimony nor argue that her testimony was misconstrued. Therefore, even assuming the SDSK tickets were sometimes inaccurate, Adams has failed to present any evidence indicating that *she* is owed unpaid overtime for out-of-office work during the Badge Period "as a matter of just and reasonable inference." *Kuebel*, 643 F.3d at 362.

There is thus no triable issue of fact with respect to Adams' alleged unpaid overtime during the Badge Period—either under the Rounding Policy or for out-of-office work—and summary judgment is granted in favor of Bloomberg.

### 3. The MYHR Period

With respect to the MYHR Period, Judge Cott rejected Adams' claim for unpaid overtime because she failed to set forth "sufficient evidence to show the amount and extent of [her uncompensated work] as a matter of just and reasonable inference." *Adams*, 2023 WL 1957681, at *11 (quoting *Daniels v. 1710 Realty LLC*, 2011 WL 3648245, at *4 (E.D.N.Y. Aug. 17, 2011)); *see also Kuebel*, 643 F.3d at 362 (articulating the same standard). Although Adams testified that there was overtime work she did not report in MYHR, in addition to overtime work that she did report in MYHR but for which she was not paid, she could not recall "when this overtime work was performed, what tasks she was performing, or with what frequency it occurred." *Id.* at *12. Bloomberg, on the other hand, presented evidence demonstrating that during the MYHR Period, there was only one week in which Adams worked more than 40 hours, and she was paid for that overtime. *Id.* at *11. Because Adams "was not able to provide even approximate time frames or numbers," Judge Cott concluded that she failed to raise a "just and reasonable inference" of unpaid overtime during the MYHR Period. *Id.* at *12.

Adams argues that Judge Cott overlooked evidence showing that the MYHR system was inaccurate and inadequate, but that flatly misconstrues the R&R—Judge Cott expressly conducted his analysis "assuming the MYHR records are not accurate." *Id.* at *12. As he noted, however, and as discussed above, even assuming an employer's records are "inaccurate or inadequate," a plaintiff must still present "sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference" in order to survive summary judgment. *Kuebel*, 643 F.3d at 362.

The Court further agrees with Judge Cott that Adams failed to raise a "just and reasonable inference" of the "amount and extent of [her] uncompensated work." In her objections, Adams

16

points to only two pieces of evidence in an attempt to raise such an inference.  First, Adams relies

on a data summary from the week of April 14, 2019—the one week during the MYHR Period for

which she was paid overtime—which, according to Adams, proves that she "worked" 45.33 hours

but was only paid for 41 hours.  Pl. Objections at 20 (citing ECF No. 105-5).  However, as Adams

herself admits, the 45.33 hours in the data summary only reflects badge data—i.e., the time

between when she badged in and out of the Bloomberg office—not the actual number of hours

"worked."  *See* Pl. Resp. to Def. 56.1 Statement of Facts ¶ 135 (asserting that "badge records show

that Ms. Adams had 5.33 overtime hours"); Russo Decl. ¶ 48 (explaining that the data summary

shows an overtime total of 5.33 hours pursuant to the "Actual Badge/30-minute method," which

is defined as "[u]sing Actual Badge time and a 30-minute break threshold").  As Judge Cott

correctly noted, employees were no longer paid overtime according to their badge data during the

MYHR Period.

Furthermore, Adams does not present any evidence suggesting that she was actually

"working" for the entirety of those 45.33 hours—or at least for more than 41 hours, which was

how much she was paid for—as defined by federal law.  *See* 29 U.S.C. § 254(a)(1)-(2) (excluding

from compensable work "walking, riding, or traveling to and from the actual place of performance

of the principal activity or activities which such employee is employed to perform" and "activities

which are preliminary to or postliminary to said principal activity or activities").  She points only

to a timestamp summary from the week of April 14, 2019, which, according to her, shows that she

"accessed Bloomberg's systems—i.e., performed work—before her scheduled shift time and

during lunch, in addition to having worked in the building 45.33 hours."  Pl. Objections at 20

(citing ECF No. 111-21).  It is unclear to the Court, however, how Adams reaches that conclusion

based on this particular exhibit, which does not indicate when her shifts started, when she took her

lunch break, what tasks she performed during her lunch break, how long she spent on individual tasks, or what she was doing in between timestamp entries.  When asked to explain the exhibit at oral argument, Adams' counsel responded that "it is a collection of odd times, that is the ticketing system that Ms. Adams is working on . . . and it shows over that week that Ms. Adams is engaged to the minute when she's engaged with those systems."  Hr'g Tr. at 22:3-7; *see also id.* at 23:3-5 ("[W]hat that, those 28 pages of time stamps show, is that Ms. Adams was not out and about, she was engaged during her shift with work systems.").  These vague and unsupported statements fail to meet Adams' burden, in opposing summary judgment, to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.

The Court is left with the fact that Adams was physically badged into the office for 45.33 hours in a single week.  That fact does not raise a "just and reasonable inference" of the "amount and extent of [her] uncompensated work," particularly in light of her deposition testimony where, despite multiple prompts, she could not provide even a rough estimate of the amount of unpaid overtime she purportedly accumulated during the MYHR Period.  *See* Adams Deposition Tr. 260:15-20 ("Q: [D]id you do any work for Bloomberg that you did not record in the MYHR system?  A: I don't remember."); *id.* at 324:8-16 ("Q: As you sit here today, can you recall a single time during the MYHR period where you did work beyond your scheduled hours in a week . . . and didn't report that time accurately in the MYHR system?  A: I don't remember."); *id.* at 329:16-24 ("Q: [D]uring that MYHR time period, how many weeks did you work more than 40 hours and not get paid for the time in excess of 40 hours?  A: Sorry.  As I mentioned before, I don't remember. I can't give a specific day or time."); *see also Daniels v. 1710 Realty LLC*, 497 F. App'x 137, 139 (2d Cir. 2012) (observing that, while a plaintiff may meet her burden under the FLSA "through

estimates based on [her] own recollection . . . there must be at least some credible evidence that [she] performed overtime work," and testimony that is vague or speculative will not suffice).

Accordingly, Adams fails to set forth "specific facts showing that there is a genuine issue for trial" with respect to her alleged unpaid overtime during the MYHR Period, and summary judgment is granted in favor of Bloomberg.  *Anderson*, 477 U.S. at 256.

## II.    Unpaid Wages Claim Under NYLL § 193

Because Adams does not object to Judge Cott's recommendation to dismiss her NYLL § 193 claim, the Court reviews his recommendation for clear error and finds none.  NYLL § 193 states that "[n]o employer shall make any deduction from the wages of an employee, except deductions which . . . are made in accordance with the provisions of any law . . . or are expressly authorized in writing by the employee and are for the benefit of the employee." NYLL § 193(1)(a)-(b).  "In order to state a claim for a violation of NYLL § 193, a plaintiff must allege a specific deduction from wages and not merely a failure to pay wages." *Goldberg v. Jacquet*, 667 F. App'x 313, 314 (2d Cir. 2016) (citing *Kletter v. Flemming*, 820 N.Y.S.2d 348, 350 (App. Div. 2006)). As Judge Cott correctly noted, Adams does not allege that Bloomberg made any improper deductions from her wages, only that Bloomberg failed to pay overtime wages.  Adams' claim under NYLL § 193 is thus dismissed.

## III.    Wage Statement Claim Under NYLL § 195(3)

Judge Cott recommended dismissing Adams' wage statement claim under NYLL § 195(3) because NYLL § 198(1-d) "provides an affirmative defense against improper wage statements claim[s] if 'the employer made complete and timely payment of all wages due.'" *Adams*, 2023 WL 1957681, at *15 (quoting *Guan Ming Lin v. Benihana N.Y. Corp.*, 2012 WL 7620734, at *13 (S.D.N.Y. Oct. 23, 2012)); *see* NYLL § 198(1-d) ("In any action . . . to recover damages for

violation of subdivision three of section one hundred ninety-five of this article, it shall be an affirmative defense that . . . the employer made complete and timely payment of all wages due . . . to the employee who was not provided statements as required by [§ 195(3)] . . . .").  Because Judge Cott found no unpaid wages due from Bloomberg to Adams, he concluded that the affirmative defense applies.  Adams' only objection is that Bloomberg did not in fact make complete and timely payment of all wages due.  As detailed above, however, the Court agrees with Judge Cott that there is no genuine dispute of material fact with respect to Bloomberg's complete and timely payment of wages.  Accordingly, the Court concludes that the NYLL § 198(1-d) defense is applicable and Adams' wage statement claim is dismissed.

## IV.    Wage Notice Claim Under NYLL § 195(1)

Judge Cott recommended dismissing Adams' wage notice claim under NYLL § 195(1) because it is barred by the six-year statute of limitations.  *Adams*, 2023 WL 1957681, at *15. Adams argues that, because Bloomberg failed to provide the required wage notice at the time of her hiring in December 2011 and then "never corrected [that] failure," her claim "continued to accrue" and is thus not time-barred.  Pl. Objections at 21.  The Court declines to reach the timeliness question because in any event, NYLL § 198(1-b) provides a parallel affirmative defense against § 195(1) claims for employers who "made complete and timely payment of all wages due." NYLL § 198(1-b).  Because there is no genuine dispute of material fact with respect to Bloomberg's complete and timely payment of wages, the affirmative defense under § 198(1-b) applies and Adams' wage notice claim is dismissed.

## V.    Leave to File a Third Amended Complaint

Finally, Judge Cott recommended denying Adams' motion for leave to file a Third Amended Complaint because "granting Bloomberg's motion for summary judgment will dismiss

the case in its current posture." *Adams*, 2023 WL 1957681, at *16.  Judge Cott recommended

denying the motion without prejudice, however, because "the opt-in plaintiffs should be allowed

to renew the motion for leave to amend in order to substitute themselves for Adams as their claims

may have merit independently of Adams." *Id.*   Adams raises no substantive reason as to why, at

this stage of the litigation, leave to amend should be granted on her claims.  The Court thus agrees

with Judge Cott's conclusion and denies the motion without prejudice to renewal by the opt-in

plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court adopts the conclusions reached in Judge Cott's

thorough and well-reasoned Report & Recommendation.  Accordingly, Bloomberg's motion for

summary judgment is granted, and Adams' motion for leave to amend is denied without prejudice

to renewal by the opt-in plaintiffs.  The Clerk of Court is respectfully directed to terminate the

motions pending at ECF No. 88 and 108.

Dated:     September 7, 2023
           New York, New York

_____
Ronnie Abrams
United States District Judge